UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW JERSEY

M.L. KING, JR. FEDERAL BUILDING
50 WALNUT ST., 3RD FLOOR
NEWARK, NEW JERSEY 07102

DONALD H. STECKROTH                                                 (973) 645-4693
    BANKRUPTCY JUDGE                                             Fax: (973) 645-2606

**NOT FOR PUBLICATION**

**FILED**

JAMES J. WALDRON, CLERK

**AUG. 10, 2010**

U.S. BANKRUPTCY COURT
NEWARK, N.J.

BY: s/ Ronnie Plasner, DEPUTY

August 10, 2010

**LETTER OPINION
ORIGINAL FILED WITH THE CLERK OF THE COURT**

Bray, Miller & Bray, L.L.C.                    Trenk, DiPasquale, Webster, Della Fera &
Peter R. Bray, Esq.                            Sodono, P.C.
100 Misty Lane                                 Richard D. Trenk, Esq.
Parsippany, New Jersey  07054-2710             347 Mount Bleasant Avenue, Suite 300
***Counsel for Defendant***                    West Orange, New Jersey  07052
                                               ***Counsel for Chapter 7 Trustee/Plaintiff***

Re:    **Yablonsky v. Shields
       Adversary Proceeding No. 09-01726  (DHS)**

Dear Counsel:

    Before the Court are competing motions for summary judgment.  Defendant, Christopher
Shields ("Defendant" or "Shields") seeks summary judgment dismissing all counts of the
Complaint against him.  The Plaintiff, chapter 7 trustee Daniel Yablonsky ("Trustee") opposes
summary judgment on all counts and has cross-moved for summary judgment on Counts Three
and Four.  For the reasons stated herein, summary judgment is granted in favor of the Defendant
on counts Three and Four and denied on Count Five, and summary judgment is granted to the
Trustee on Count One.

    The Court has jurisdiction over this motion pursuant to 28 U.S.C. § 1334 and the
Standing Order of Reference from the United States District Court for the District of New Jersey

Page 2
August 10, 2010

dated July 23, 1984.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (I).  Venue is proper under 28 U.S.C. §§ 1408 and 1409.

## I.    Facts and Procedural History

The Defendant is an alleged secured creditor of the Debtor and the winning bidder at a Court-approved auction of the Debtor's assets, who failed to consummate the sale.  The Trustee commenced this adversary proceeding to dispute the Defendant's status as a secured creditor and to recover damages constituting the difference between the Defendant's bid and the price at which the Trustee ultimately sold the assets.

The corporate Debtor owned and operated a bar and nightclub in Ridgewood, New Jersey.  (Mem. of Law in Supp. of Pl's. Cross-mot. for Summ. J. and in Opp. to Def's. Mot. for Summ. J. ("Pl's Mem.") 3.)  The Debtor was run by its President and co-owner, Lori Montenigro.  (*Id*.)  On September 15, 2008, the Debtor filed for chapter 7 bankruptcy and, on the following day, the Plaintiff was appointed as chapter 7 trustee.  (*Id.*)

### A.    The Debtor's Debt to the Defendant

In mid 2007, both the Debtor and the Defendant were working with the same mortgage broker in order to obtain financing.  Because both were having trouble obtaining financing individually, the Debtor and Defendant consummated an arrangement whereby the Defendant borrowed $2.6 million at approximately 10% interest, secured by a second mortgage on his home, and lent the Debtor $2 million at approximately 16% interest.  (*Id.* at 3-4.)  As security, the Debtor's principals pledged their shares in the Debtor.  (*Id.* at 4.)  Additionally, the Defendant filed a UCC-1 financing statement with the Bergen County Clerk and the New Jersey Department of Treasury, purporting to take an interest in all of the Debtor's personal property,and received an assignment from TD Bank of its interest in the Debtor's personal property, which was also secured by a UCC-1.  (*Id.*)  TD Bank's financing statement was originally filed on September 4, 2003 but neither TD Bank nor the Defendant ever filed a continuation of that statement.  (*Id.*)

### B.    Auction of Debtor's Assets

On October 16, 2008, the Trustee obtained approval from this Court to hold a public auction of the Debtor's assets including the liquor license, a leasehold interest in the premises where the bar had operated, and all of the furniture, equipment, and fixtures that were in the bar. (*Id.*)  By the terms of the auction, each bidder was required to submit a certified check for $100,000 as a deposit, which would be returned to the losing bidders, but forfeited by the winning bidder if he failed to close within the time allowed.  (*Id.*)  The relevant term in the auction catalog reads "[s]hould high bidder fail to pay balance on time, deposit will be forfeited." (*Id.*)

Page 3
August 10, 2010

The auction contents were divided into several packages, including a bulk package that encompassed all contents. (*Id.* at 5.) The Defendant submitted the highest bid of $789,000 on the bulk package, which was also the best bid on all packages. (*Id.* at 6.) The Trustee accepted the Defendant's bid and moved the Court, on notice to the Defendant, for approval of the sale. (*Id.*) On November 5, 2008, the Court entered an order approving the sale and the assumption and assignment of the liquor license, and ordering the transaction be closed by November 7, 2008. (*Id.* at 6-7.) After three weeks and several objections by the Defendant to the form of the sale order, the Court entered a second order on November 17, 2008, that ordered the Defendant to close on the sale by the next day at 5:00 p.m. (*Id.* at 7.) Defendant failed to close by that date and withdrew from the transaction altogether. *Id.* Thereafter, the Trustee sold the liquor license and equipment to Quail Run, L.P. for $446,000—a significantly lower price than the Defendant's high bid.

The trustee avers that as an explicit term of the auction, the winning bidder would be liable for the full extent of contract damages if he failed to consummate the sale; specifically, the difference between the high bid and the ultimate sale price. (*Id.* at 5.) In support of this claim, the Trustee points to auction terms on the auctioneer's website that purport to govern all sales of personal property, which state in relevant part that

> [i]n the event that the bidder fails to comply with the terms of final payment and removal as required: The Auctioneer reserves the right to resell the item concerned, without notice to the bidder and the bidder's deposit will be forfeited and bidder will remain liable for any deficiency as well as the expenses incurred by such resale.

(*Id.* at 5-6; Certif. of Michael Sklar in Opp. to Def's Mot. for Summ. J. (Sklar Certif), Ex. A.)

Additionally, the auctioneer certified that he expressly informed all bidders that they would be liable for economic damages if they failed to fulfill a winning bid and the Trustee was forced to resell at a lower price. (Sklar Certif. ¶ 4.) The auctioneer further certified that the Defendant verbally acknowledged he understood this term after the auction was complete. (*Id.* at ¶ 5.) The Defendant denies any such understanding and argues that such term was never announced and is, therefore, not a term of the contract. (Brf. In Supp. of Def's Mot. for Summ. J. ("Def's Brf.") 7.) However, the Defendant has not alleged either in his certification or in the portions of the deposition transcript before the Court that any term was announced expressly limiting damages to the deposit amount. During oral argument, Defendant's counsel represented that he thought the Defendant stated in his affidavit submitted in support of this motion that he was told damages were limited to the deposit. However, the Court's review of the Defendant's affidavit reveals no such statement.

Page 4
August 10, 2010


# DISCUSSION

## I.    Summary Judgment Standard

A court may grant summary judgment under Federal Rule of Civil Procedure 56(c), made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7056, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.*  At the summary judgment stage, the role of the court "is not to weigh evidence, but to determine whether there is a genuine issue for trial." *Knauss v. Dwek*, 289 F. Supp. 2d 546, 549 (D.N.J. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  The court must construe facts and inferences in a light most favorable to the non-moving party. *See Am. Marine Rail NJ, LLC v. City of Bayonne*, 289 F. Supp. 2d 569, 578 (D.N.J. 2003) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986)).  "Only evidence admissible at trial may be used to test a summary judgment motion.  Thus, evidence whose foundation is deficient must be excluded from consideration." *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 471 (3d Cir. 1989) (citations omitted).

The moving party must make an initial showing that there is no genuine issue of material fact. *See Knauss*, 289 F. Supp. 2d at 549 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The burden then shifts to the non-moving party to "'make a showing sufficient to establish the existence of [every] element essential to the party's case, and on which that party will bear the burden of proof at trial.'" *Cardenas v. Massey*, 269 F.3d 251, 254-55 (3d Cir. 2001) (questioned on other grounds) (quoting *Celotex Corp.*, 477 U.S. at 322).  The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original).  An issue of fact is "genuine" if a reasonable juror could return a verdict for the non-moving party. *See id.* at 248. Furthermore, a material fact is determined by the substantive law at issue. *See Crane v. Yurick*, 287 F. Supp. 2d 553, 556 (D.N.J. 2003) (citing *Anderson*, 477 U.S. at 248).  A fact is "material" if it might affect the outcome of the suit under governing law. *Id.*  Disputes over irrelevant or unnecessary facts are insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 248 (citation omitted).

However, even if material facts remain disputed, summary judgment may be proper if, after all inferences are drawn in the non-moving party's favor, the moving party is entitled to judgment as a matter of law. *Id.* at 248-50.  Such a judgment is appropriate "as a matter of law" when the non-moving party has failed to make an adequate showing on an essential element of his or her case, as to which he or she has the burden of proof. *See Celotex Corp.*, 477 U.S. at 322-23.  When one party moves the court for summary judgment, Federal Rules of Civil Procedure 54(c) and 56, taken together, permit the court to enter summary judgment on behalf of

Page 5
August 10, 2010

the non-movant, even if the non-movant has not filed a cross-motion for summary judgment. *See Peiffer v. Lebanon Sch. Dist.*, 673 F. Supp. 147, 151-52 (M.D. Pa. 1987) (citation omitted). On the other hand, a court must deny a motion for summary judgment when a genuine issue of material fact remains to be tried, or where the moving party is not entitled to a judgment as a matter of law.

## II.   Defendant's Status as Secured Creditor

### A.   Defendant's Assigned Security Interest

The Defendant is the assignee of a security interest previously held by TD Bank North, N.A. ("TD Bank"). TD Bank perfected its security interest in the Debtor's property by filing a financing statement with the New Jersey Division of Commercial Recording on September 4, 2003. On December 28, 2007, the Defendant purchased TD Bank's security interest in the Debtor. However, pursuant to New Jersey statute, financing statements are only effective for a period of five years from the date of filing except under limited circumstances. N.J. Stat. Ann. § 12A:9-515(a) (stating "[e]xcept as otherwise provided in subsections (b), (e), (f) and (g), a filed financing statement is effective for a period of five years after the date of filing."). The effective period of a financing statement may be extended by filing a continuation, but only within the six-month period immediately preceding the expiration of the original statement. N.J. Stat. Ann. § 12A:9-515(d) (stating "[a] continuation statement may only be filed within six months before the expiration of the five-year period specified in subsection (a)). In this case, the effectiveness of the TD Bank financing statement expired in September of 2008. Neither TD Bank nor the Defendant filed a continuation during the six months prior to expiration. Thus, the financing statement that secured the interest that the Defendant purchased from TD Bank is no longer in force.

### B.   Defendant's UCC-1

Under the UCC, as codified in New Jersey, financing statements that are filed in the county mortgage records are only effective if "(A) the collateral is as-extracted collateral or timber to be cut; or (B) the financing statement is filed as a fixture filing and the collateral is goods that are or are to become fixtures." N.J. Stat. Ann. § 12A:9-501(a)(1). In all other cases, financing statements must be filed with the state Division of Commercial Recording, "including a case in which the collateral is goods that are or are to become fixtures and the financing statement is not filed as a fixture filing. *Id.* at § 12A:9-501(a)(2). In the present case, the Trustee claimed in his moving papers that Defendant only filed his UCC financing statement with the Register of Deeds of Bergen County, but not with the state Division of Commercial Recording. However, in his reply affidavit, the Defendant attached a copy of a UCC financing statement stamped "Filed" by the New Jersey Department of Treasury on January 24, 2008. At oral argument, the Trustee conceded to the validity of the filed UCC-1 statement; therefore,

Page 6
August 10, 2010

summary judgment is granted in favor of the Defendant on Counts Three and Four of the
Complaint.

### III.    Defendant's Liability for Failure to Consummate Auction Sale

Regarding the Defendant's failure to consummate the auction sale, the Defendant argues
that his liability is limited to forfeiture of the $100,000 security deposit.  In opposition, the
Trustee argues (i) that liability for the difference between the contract price and the ultimate sale
price was explicitly stated and, therefore, an explicit term of the sale; (ii) the security deposit
forfeiture clause was not a limiting liquidated damages clause; (iii) the Defendant waived his
right to argue that damages were limited to the security deposit by not raising the issue during
the previous sale-order hearings; and finally, (iv) that the Defendant's conduct was inequitable
and justifies equitable subordination of his secured claim pursuant to § 510(c).

Under New Jersey law, a completed auction creates a contract in which the winning
bidder is obligated to pay the sale price.  *Bassford v. Trico Mortgage Co.*, 273 N.J. Super. 379,
384 ( Law Div. 1993).  It is axiomatic that in a breach-of-contract case, "the function of damages
is simply to make the injured party whole."  *Furst v. Einstein Moomjy, Inc.*, 182 N.J. 1, 13, 860
A.2d 435, 441 (N.J. 2004) (citing *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 21, 647 A.2d 454,
463 (N.J. 1994)).  The "innocent party must be given the 'benefit of his bargain' and placed in
'as good a position as he would have been in had the contract been performed.'"  *Id.*, 860 A.2d at
442 (citing *Scully v. US WATS, Inc.*, 238 F.3d 497, 512 (3d Cir. 2001)).  Thus "the innocent party
has a right to damages 'based on his expectation interest as measured by . . . the loss in the value
to him' caused by the breaching party's nonperformance.  *Id.* (quoting Restatement (Second) of
Contracts at § 347(a)).

It is the law of New Jersey to "enforce contracts in accordance with their terms."
*Maglies v. Estate of Guy*, 193 N.J. 108, 143, 936 A.2d 414 (N.J. 2007) (Hoens, J., dissenting).
Thus, New Jersey courts "do not supply terms to contracts that are plain and unambiguous, nor
do [they] make a better contract for either of the parties than the one which the parties
themselves have created."  *Id.* (citing *Kampf v. Franklin Life Ins. Co.*, 33 N.J. 36, 45, 161 A.2d
717 (N.J. 1960); *Graziano v. Grant*, 326 N.J. Super. 328, 342, 741 A.2d 156 (N.J. Super. Ct.
App. Div. 1999)).

The Defendant argues that the deposit forfeiture clause was intended to be the exclusive
remedy for breach and thus precludes the Trustee from seeking remedies otherwise available to
a seller for breach of a sales contract.  However, the Court finds no reasonable reading of the
clause nor other evidence that forfeiture of the deposit was intended to be a limitation on
damages or the sole remedy for total breach of the sales contract.  The relevant term only
governs "[s]hould high bidder fail to pay balance *on time*" (emphasis added) but does not specify
a remedy for failure to consummate the sale in toto.  Furthermore, the Defendant has not averred
through competent evidence that any additional oral or written representations purported to limit

Page 7
August 10, 2010

damages for failure to conclude the sale to the deposit.  Under these circumstances, the Court can find no reasonable grounds to conclude that the deposit forfeiture clause in the auction brochure was intended to limit or preclude the remedies otherwise available to a seller for breach of contract.[1]

Thus, the only factual dispute regarding the terms of the sale is whether the right to seek damages in excess of the deposit was explicitly stated either on the auctioneer's website, or verbally by the auctioneer before bidding.  However, since such terms would only confirm the remedies that the Trustee is entitled to under relevant contract law, this dispute is not "material" and, therefore, the Trustee is entitled to summary judgment on Count One of the Complaint. Because the Court holds that the Trustee is entitled to the difference between the Defendant's bid and the actual sales price, the Court does not reach the Trustee's promissory estoppel argument. Therefore, summary judgment is denied on Count Two as to both parties without prejudice.

## IV.     Equitable Subordination

Finally, neither party has specifically briefed Count Five of the Complaint, in which the Trustee seeks to equitably subordinate the Defendant's claim under § 510(c).  On the record before the Court, there is currently no basis for imposing such a draconian remedy.  As a result, the Court denies the Defendant's motion for summary judgment on Count Five of the Complaint.

## <u>CONCLUSION</u>

Summary judgment is granted in favor of the Defendant on Counts Three and Four of the Complaint because the Defendant holds a properly perfected security interest in the property of the Debtor as evidenced by the financing statements filed in Bergen County and with the State of New Jersey.  It is further held that the deposit forfeiture clause in the auction brochure does not contractually preclude the Trustee from seeking other remedies available to him for breach of contract.  As a result, summary judgment is granted in favor of the Trustee on Count One of the Complaint and denied without prejudice on Count Two.  Finally, summary judgment is denied on Count Five of the Complaint.

---

[1] The Defendant's attorney represented during oral argument that he thought the Defendant had stated in his affidavit that he was told damages were limited to his deposit.  However, the Court's examination of the record does not support this claim.

Page 8
August 10, 2010


An Order in conformance with this Opinion has been entered by the Court and a copy attached hereto.

Very truly yours,

*s/    Donald H. Steckroth*

DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Enclosure